FILED

JAMES J. VILT, JR. - CLERK

JUN 02 2026

U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

UNITED STATES OF AMERICA

v.

MARSHALL J. ELLINGTON

Case No.: 1:26MJ-52-HBB

**UNDER SEAL**

### AFFIDAVIT

I, TRENTON D. BROWNING, being duly sworn, state as follows:

1.    I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been so employed, since approximately June of 2021. I am currently assigned to the Louisville Field Office Violent Crime and Fugitive Task Force. My current responsibilities include the investigation of violent crimes, including among others, kidnaping, bank robbery, carjackings, and the apprehension of violent fugitives. During my career I have utilized various investigative tools and techniques, to include search warrants. During my training and experience, I have become familiar with investigations involving threatening communications.

2.    This affidavit is submitted in support of a criminal complaint alleging that MARSHALL J. ELLINGTON has violated Title 18, United States Code, Section 875(c) (Interstate Communications). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging ELLINGTON with Interstate Communications. I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

1

3.      This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents and in law enforcement records, interviews of witnesses, my review of text message screenshots, my training and experience, and the training and experience of other law enforcement agents.

## 1.      FACTS SUPPORTING PROBABLE CAUSE

### A.    Summary of Probable Cause

4.      The Federal Bureau of Investigation (FBI) is investigating MARSHALL J. ELLINGTON for violations of Title 18, *United States Code* § 875(c) (Interstate Communications).

5.      On June 1, 2026, the FBI National Threats Operations Center (NTOC) received a call from Victim 1 to report allegations of threatening communications by ELLINGTON.

6.      More specifically, on or about May 30, 2026, at approximately 9:52 p.m., Victim 2 received in the Western District of Kentucky a text[1] from ELLINGTON from telephone number (210) 557-2126[2] ("SUBJECT PHONE") that stated the following:

ELLINGTON: "I'm ready to have a conversation whenever you're ready. You are a true coward and I can't believe I ever had any type of relationship with you. Your cowardice to not have guts to even communicate with me is pathetic. I'm going to slowly and methodically take away everything you hold dear. When I'm done you will beg to take your own life. I will do the same to your attorney [REDACTED][3] and his family. Or you just talk to me [REDACTED][4]. Your choice."

---

[1] Victim 2 provided screen shot images of a text message conversation between he/her and the contact name "MARSHALL" originating from telephone number (210) 557-2126 (SUBJECT PHONE).

[2] According to subscriber records, phone number (210) 557-2126 was assigned to MARSHALL JEFFREY ELLINGTON at address 532 4th Street, Apartment 501, Louisville, KY.

[3] ELLINGTON names Victim 1 which has been redacted to protect the identity of the victim.

[4] ELLINGTON names Victim 2 which has been redacted to protect the identity of the victim.

7.    Victim 2 received in the Western District of Kentucky another text message from ELLINGTON on May 31, 2026, at approximately 4:36 p.m. which stated the following: ELLINGTON: This is 100% how I feel about you. But I would never physically hurt you or our kids. [REDACTED][5] on the other hand I'm going to slit his throat in the middle of the night and watch him bleed out and smile. And anyone who stands in my way better be ready to fight to the death."

8.    Victim 2 received in the Western District of Kentucky another text message from ELLINGTON on June 1, 2026, at approximately 10:36 a.m. which stated the following: ELLINGTON: "A terminal list exists and [REDACTED][6] is on it. He's going to fucking die and there is nothing you, nor police, nor any authority to stop it. It may be today, tonight, or 5 years from now. But it's going to happen. The terminal list is long."

9.    On June 1, 2026, at approximately 11:48 a.m., Victim 1 received in the Western District of Kentucky a phone call from phone number 719-435-0147[7] that left a voicemail[8] which stated the following: "Yes, this message if for [REDACTED][9], just wanted you to hear the voice of the man who is going to slit your throat."

10.    Victim 2 received in the Western District of Kentucky another text message from ELLINGTON on June 1, 2026, at approximately 8:43 a.m. which stated the following:

---

[5] ELLINGTON names Victim 1 which has been redacted to protect the identity of the victim.

[6] ELLINGTON names Victim 1 which has been redacted to protect the identity of the victim.

[7] According to open-source records, phone number 719-435-0147 is associated with Bandwidth.com indicating a likely Voice over Internet Protocol (VoIP) number.

[8] Victim 1 shared the voicemail with Victim 2 who identified the voice as belonging to ELLINGTON.

[9] ELLINGTON names Victim 1 which has been redacted to protect the identity of the victim.

ELLINGTON: "I truly would never hurt you. I think once when I was drunk maybe 20 years ago I punched you in the ankle. That was not right. But everything inside me tells me to kill this guy. Maybe it's karma, I have no idea. But it's going to happen. I will make it quick and kind of painless for him. But I will watch him bleed out so I will truly know if he deserved it or not.

ELLINGTON: "The only reason you're not talking to me is because of this man. For that reason I'm going to end his life. If you think I'm bluffing you would be wrong. I'm going to fucking slit his throat."

### B.    Interview of Victim 2

11.    According to Victim 2, ELLINGTON and Victim 2 were previously married but have been separated for approximately 11-12 years. ELLINGTON recently left the United States in the middle of April to go to Rehab in Costa Rica for drug and alcohol abuse. Victim 2 was a registered nurse (RN) specializing in behavioral health and noticed a significant decline in ELLINGTON's mental state since last Thanksgiving. Victim 2 last believed ELLINGTON to be somewhere in South America and noted that ELLINGTON had told his children that he was attending a wedding in Mexico on or about June 5, 2026.

12.    Victim 2 advised that he/she began receiving concerning text messages from ELLINGTON on May 30, 2026. Victim 2 shared the messages with his/her attorney, Victim 1, due to the nature of the messages. Victim 2 advised that Victim 1 sent him/her a voicemail that he/she received which he/she identified the voice as ELLINGTON.

### C.    Interview of Victim 1

13.    According to Victim 1, Victim 1 recently began representing Victim 2 regarding the divorce between Victim 2 and ELLINGTON. To date, the only substantial step Victim 1 had

taken in the case was the submission of formal paperwork to become the official attorney representing Victim 2.

14.    After becoming Victim 2's attorney, things were quiet for a little while until Victim 2 made him aware of a text he/she had received from ELLINGTON. Victim 1 stated that in his/her line of work that he/she regularly receives threats and shrugged it off. Victim 2 then received a voicemail from phone number 719-435-0147 to his work line of 270-780-9655, which is a VoIP, that was received on June 1, 2026, at approximately 11:48 a.m. Victim 1 stated that after he/she heard the voicemail, he/she immediately sent it to Victim 2 to see if she identified the voice as belonging to ELLINGTON. After Victim 2 verified the voice as ELLINGTON's, Victim 1 then deemed the threat as credible. Victim 1 immediately called 911 to report[10] the threatening voicemail he received.

15.    Victim 1 informed law enforcement that since the threat was made, he has closed down his office and moved his family to a new location for his safety and fear that ELLINGTON would try to hurt or kill him/her.

## D.    Facts Regarding Interstate Commerce

16.    Based on my training, experience, and participation in this investigation, I know that cellular telephones are instrumentalities of interstate commerce used to transmit electronic communications. When a user sends a text message or places a telephone call, the signal is routed through cellular towers, network switches, and data servers located across multiple states, thereby utilizing and affecting interstate commerce.

---

[10] Victim 1 stated that he/she made a report to the Bowling Green Police Department under police report number 2026-04026.

5

## II.    CONCLUSION

17.    Based on the foregoing facts, I respectfully submit that there is probable cause to believe that, on or about June 1, 2026, MARSHALL J. ELLINGTON, by transmitting in interstate commerce with a cellular device, made a credible threat to kill Victim 1, in violation of Title 18, United States Code, Section 875(c).

FURTHER AFFIANT SAYETH NOT.

/s/ Trenton D. Browning
TRENTON D. BROWNING
Special Agent
Federal Bureau of Investigation

Sworn to/attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: June 2, 2026

H. Brent Brennenstuhl
U.S. Magistrate Judge

6